The Shamrock Oil and Gas Corporation v. Commissioner.
Shamrock Oil & Gas Corp. v. Commissioner
Docket Nos. 49145, 61315, 68580, 77791. .
United States Tax Court
T.C. Memo 1963-35; 1963 Tax Ct. Memo LEXIS 311; 22 T.C.M. (CCH) 142; T.C.M. (RIA) 63035; 17 Oil & Gas Rep. 619; February 6, 1963
*311 Wright Matthews, Esq., Republic Nat'l Bank Bldg., Dallas, Tex., W. M. Sutton, Esq., H. A. Berry, Esq., and Ed H. Selecman, Esq., for the petitioner. Roy E. Graham, Esq., and Allen T. Akin, Esq., for the respondent. TRAIN
Supplemental Memorandum Findings of Fact and Action on Motions TRAIN, Judge: Our Findings of Fact and Opinion in this case were filed on March 24, 1961, and are reported in . Subsequently, both the petitioner and the respondent filed various motions for reconsideration, for corrections in the findings of fact, for additional findings and rehearing. Based upon a careful reexamination of our Findings of Fact and Opinion, it appearing that certain of the parties' contentions are meritorious, corrections and additions to the Findings of Fact are hereby made and set out below as Supplemental Findings of Fact. In all other respects, the respective motions of the parties are denied. (1) On page 995, in the table entitled "Schedule of Gas Acquired by Shamrock from Royalty Owners for Years Ended November 30, 1943 through 1954," in the column titled "Total" for the year 1951, the sum of the total volumes of sour, sweet, casinghead *312 and overriding royalty gas acquired by petitioner from royalty owners during the year 1951 is changed to read "13,290,999" instead of "13,090,999." (2) On page 998, under the sub-column entitled "Price" under the heading "1945," the amount tabulated as being paid for the volume of 13,302 MCF acquired from Magnolia Petroleum Company, is changed to read ".012767" instead of "$.012467." (3) On page 1000, in the table entitled "Summary Schedule of Shamrock Casinghead Gas Purchases for Years ended November 30, 1947 through 1954," in the column headed "Number of Contracts," the total for the year 1949 is changed to read "15" instead of "19," the total for the year 1950 is changed to read "17" instead of "20," the total for the year 1951 is changed to read "18" instead of "20," and the total for 1953 is changed to read "19" instead of "23." (4) On page 1001, in the table entitled "Schedule of Casinghead Gas Purchased by Shamrock 1947 through 1954 in Terms of MCF and Price per MCF," the volume of casinghead gas purchased during 1951 from Service Drilling Company is changed to read "444,382MCF" instead of "44,382MCF." (5) On page 1020, in the table entitled "Raw Gas Purchased by Interstate *313 Pipeline Companies During Calendar Year ," for the year 1952, the entries relating to the purchases by Northern Natural on 4/14/51, by Northern Natural on 4/12/51, and by Panhandle Eastern on 8/30/51 are stricken. (6) On page 1021, in the same table, for the year 1953, under the column headed "Cents /MCF at 14.65 PSIA," the figure ".0113525" is changed to read ".113525" and the figure ".0113494" is changed to read ".113494." (7) On page 1022, in the same table and under the same column heading for the year 1954, the figures ".0151805," ".0140000," ".0151334," ".0146025," ".0149942," ".0106755," ".0105692," ".0106818," and ".0146525" are changed, respectively, to read ".151805," ".140000," ".151334," ".146025," ".149942," ".106755," ".105692," ".106818," and ".146525." (8) On page 1025, under the column headed "Dedicated Acres," the figure "1.961" is changed wherever it appears therein to read "1,961." (9) On pages 994, 995, and 1011, the titles of the tables shown thereon (on page 1011, reference being to the second table on the page) are amended by adding at the end of each such title the following: "(all volumes being volumes of MCF at 14.65 PSIA)". (10) The parties having *314 agreed to substitute new Exhibits 5 and 6, said new exhibits are received in evidence and substituted for the original Exhibits 5 and 6 received at the trial. Reflecting the changes contained therein, (a) On page 1010, the table entitled "Disposition by Years of Total Available Raw Gas - in Terms of MCF" is stricken and the following new table substituted therefore: DISPOSITION BY YEARS OF TOTAL AVAILABLE RAW GAS - IN TERMS OF MCF (All volumes 14.65 PSIA) Residue
Total Residue
Gas Re-
Gathering
turned
Gas Available
and
Under
Total
Raw Gas
Extraction
Plant
Processing
for Sale by
Available
Raw Gas
Sales
Losses *
Fuel
Contracts
Shamrock
1943
69,300,388
148,855
2,065,376
3,907,281
9,230,221
53,948,655
1944
76,888,480
377,391
1,673,844
4,031,615
11,537,070
59,268,560
1945
91,096,177
369,559
2,046,988
3,377,935
14,213,667
71,088,028
1946
96,994,242
149,541
1,188,716
3,456,649
13,912,993
78,286,343
1947
109,374,858
2,757,918
2,210,946
4,118,566
20,733,369
79,554,059
1948
130,836,192
1,818,291
2,341,928
4,631,485
22,457,301
99,087,187
1949
160,244,539
336,540
4,069,354
4,626,119
25,535,698
125,676,828
1950
159,770,389
994,328
4,789,201
3,851,740
25,251,366
124,883,754
1951
150,687,588
1,080,574
2,348,617
7,099,540
22,558,881
117,599,976
1952
144,770,286
1,384,558
3,724,318
7,443,369
19,943,432
112,274,609
1953
137,836,683
1,145,306
4,452,500
8,665,235
18,764,486
104,809,156
1954
133,690,073
1,159,771
4,576,985
9,291,561
16,309,574
102,352,182
*315 (b) On page 1011, the table entitled "Percentage Analysis of Disposition by Years of Total Available Raw Gas" is stricken and the following new table substituted therefore: PERCENTAGE ANALYSIS OF DISPOSITION BY YEARS OF TOTAL AVAILABLE RAW GAS Residue
Gas
Returned
Total Residue
Un-
Gathering
der
Gas Available
and
Process-
Total Available
Raw Gas
Extraction
Plant
ing Con-
for Sale by
Raw Gas
Sales
Losses
Fuel
tracts
Shamrock
1943
100%
0.21%
2.98%
5.64%
13.32%
77.85%
1944
100%
0.49%
2.18%
5.24%
15.01%
77.08%
1945
100%
0.41%
2.25%
3.71%
15.61%
78.03%
1946
100%
0.15%
1.23%
3.56%
14.35%
80.71%
1947
100%
2.52%
2.02%
3.77%
18.95%
72.74%
1948
100%
1.39%
2.17%
3.54%
17.16%
75.73%
1949
100%
0.21%
2.54%
2.89%
15.93%
78.43%
1950
100%
0.62%
3.00%
2.41%
15.80%
78.17%
1951
100%
0.72%
1.56%
4.71%
14.97%
78.04%
1952
100%
0.96%
2.57%
5.14%
13.78%
77.55%
1953
100%
0.83%
3.23%
6.29%
13.61%
76.04%
1954
100%
0.87%
3.42%
6.95%
12.20%
76.56%
*316 (c) On page 1012, the table is stricken and the following new table substituted therefore: SUMMARY OF AMOUNTS RECEIVED FROM SALE OF RESIDUE GAS AND PERCENTAGES OF THE AMOUNTS RECEIVED FROM THE RESPECTIVE SALES TO THE TOTAL AMOUNT RECEIVED THEREFOR Carbon Black
Interstate
Manufacturers
Pipelines
% of
% of
Total
Total
Amount of
Amount of
Residue
Residue
Amount
Sales
Amount
Sales
1943
$ 503,849.64
82.10
1944
563,276.62
85.37
1945
976,040.63
93.21
1946
1,958,227.13
93.95
1947
2,225,207.40
76.40
$ 521,266.59
17.90
1948
3,269,308.63
66.60
1,420,918.59
28.94
1949
2,648,533.17
39.26
3,845,576.87
57.00
1950
2,512,008.07
37.97
3,815,239.25
57.67
1951
2,097,711.67
31.50
4,154,679.87
62.39
1952
1,684,288.58
25.25
4,518,819.66
67.74
1953
623,752.09
9.23
5,733,715.92
84.85
1954
153,263.00
1.85
7,598,590.66
91.43
Other Industrial
Users
Total Amount
% of
Received
Total
Amount of
from Sale
Residue
of Resi-
Amount
Sales
due Gas
1943
$109,880.26
17.90
$ 613,729.90
1944
96,515.61
14.63
659,792.23
1945
71,139.02
6.79
1,047,179.65
1946
126,208.18
6.05
2,084,435.31
1947
166,075.72
5.70
2,912,549.71
1948
219,009.09
4.46
4,909,236.31
1949
252,435.74
3.74
6,746,545.78
1950
288,016.92
4.36
6,615,264.24
1951
407,082.61
6.11
6,659,474.15
1952
468,101.09
7.01
6,671,209.33
1953
400,328.53
5.92
6,757,796.54
1954
558,673.08
6.72
8,310,526.74
*317 (11) On page 988, the second sentence of the fourth paragraph is revised to read as follows: "According to the statutory definition under the proration statutes of Texas, sour gas is natural gas having more than 1 1/2 grains of hydrogen sulphide per 100 cubic feet, or more than 30 grains of total sulphur per 100 cubic feet." (12) On page 1017, the last paragraph is deleted and the following new paragraph, and footnote, substituted therefore: "The following purchases of raw gas in the field were reported by interstate pipeline companies to the Federal Power Commission during the years in issue. All of these purchases, where the point of receipt of the raw gas was at the well mouth (except the purchase contract of 9/1/47 listed with the seller as Hagy-Harrington-Marsh and the purchaser as Northern Natural and except the purchase contract of 7/1/52 listed with the seller as Panoma and the purchaser as Northern Natural* ) have been considered by the Court and the basic provisions of the original contracts considered are set out following the schedules of purchases." *318 (13) On page 1006, the first sentence of the fourth full paragraph is revised to read as follows: "In the West Panhandle and Texas-Hugoton gasfields from 1943 through 1954, practically all sales of raw gas were under long-term contracts." (14) On page 1016, before the first full paragraph, the following new paragraph is added: "There was an increasing demand for gas for pipeline purposes beginning in the early 1940's and continuing throughout the period here involved. There was a demand on the part of Panhandle Eastern Pipeline Company for additional gas supplies. This situation was likewise true with respect to other companies. The increasing demand coincided with the increase in population. The unserved markets demanded a supply of natural gas and the pipelines in general extended their facilities to meet the demand." Footnotes
*. The volumes in this column include residue gas used as fuel by the gasoline plant operations an which there were no amounts recorded on the books as sales or charges, less vapors introduced into the gasoline plant from the refinery.↩
*. Exhibit 29, in evidence, is a copy of a gas sales contract dated July 1, 1952, between the Panoma Corporation, as seller, (Predecessor of Dorchester Corporation) and Northern Natural Gas Company, filed with the Federal Power Commission, and is the same contract that is referred to as Contract No. 11 on sheets 12 and 13 of Exhibit 23, in evidence. Exhibit 30, in evidence, is a copy of a contract dated September 1, 1947, between L. R. Hagy, et al., doing business under the firm name of Hagy, Harrington & Marsh, as seller, and Northern Natural Gas Company, filed with the Federal Power Commission, and is the same contract that is referred to as Contract No. 3 on sheets 10 and 11 of Exhibit 23.↩